AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of New Mexico

U.S. DISTRICT COURT
DISTRICT OF NEW MEXICO
2017 JUN 15  PM 2: 37
CLERK-LAS CRUCES

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

(1) a black iPhone cellular telephone; Model No: A1533;
FCC ID#: BCG-E2642A

)
)
)
)
)
)

Case No. 17MR520

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the _____ State and _____ District of _____ New Mexico _____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❒ contraband, fruits of crime, or other items illegally possessed;

❒ property designed for use, intended for use, or used in committing a crime;

❒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Possession of Marijuana with Intent to Distribute |
| 21 U.S.C. § 952 | Importation of Marijuana |

The application is based on these facts:
See Attachment C

☑ Continued on the attached sheet.

❒ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Daniel J. Ortiz, Homeland Security Investigations SA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/15/17

_____
*Judge's signature*

City and state:  Las Cruces, New Mexico

Hon. Stephan M. Vidmar, United States Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

**PROPERTY TO BE SEARCHED**

1.   The property to be searched is (1) a black iPhone cellular telephone; Model No: A1533; FCC ID#: BCG-E2642A (hereinafter the "Device"). The Device was seized from Luis Roberto ARREOLA Sotero, incident to his arrest on June 10, 2017, at the Santa Teresa, NM Port of Entry. The Device is currently located at Homeland Security Investigations, 200 E. Griggs Ave., 3rd Floor Las Cruces, NM 88001.

   This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.



**ATTACHMENT B**

**PARTICULAR THINGS TO BE SEIZED/INFORMATION TO BE RETRIEVED**

All records or information on each Device described in Attachment A that relate to violations of 21 U.S.C. § 841 or 21 U.S.C. § 952, including:

1. Digital, cellular, direct connect, and/or other telephone numbers, names, addresses, and other identifying information of customers, distributors, sources of supply, and other associates of the user of the Device;

2. Digital, cellular, direct connect, and/or other telephone numbers dialed from, which contacted, or which are otherwise stored on, the Device, along with the date and time each such communication occurred;

3. Text message logs and text messages whether sent from, to, or drafted on, the Device, along with the date and time each such communication occurred;

4. The content of voicemail messages stored on the Device, along with the date and time each such communication occurred;

5. Photographs or video recordings, along with the date and time each such photograph or video recording was created;

6. Information relating to the schedule, whereabouts, or travel of the user of the Device;

7. Information relating to other methods of communications utilized by the user of the Device and stored on the Device;

8. Bank records, checks, credit card bills, account information, and other financial records;

9. Evidence of user attribution showing who owned the Device or was using it at a particular time, including but not limited to, logs, phonebooks, saved usernames and passwords, documents, and internet browsing history.

As used above, the terms "records" and "information" include all items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

## ATTACHMENT C

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH

I, Daniel J. Ortiz, being first duly sworn, hereby depose and state the following:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— electronic device which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent (SA) with Homeland Security Investigations (HSI), and have been working in this capacity for the last seven years.  Prior to my employment with HSI, I was a Customs and Border Protection Officer (CBPO) for five years.  I am trained and employed as a federal law enforcement officer with statutory arrest authority, charged with conducting criminal investigations of alleged violations of federal criminal statutes, including those in Titles 8, 18, 19, 21 of the United States Code.  During my employment as a CBPO and a SA with HSI, I have participated in numerous intelligence and investigation driven operations, during the course of which I have conducted physical surveillance and have executed search and arrest warrants.  My primary duties as a HSI SA include, but are not limited to, the investigation of illegal immigration and controlled substances illegally imported into the United States. Additionally, I have also conducted investigations related to gang enforcement operations, ammunition smuggling, and human smuggling. Through academy training, specialized training, experience, and work with fellow agents and task force officers, I have become thoroughly familiar with marijuana, its appearance, packaging, paraphernalia, and individuals who smuggle, use and/or sell marijuana.  The factual information supplied in this affidavit is based on my investigation of this case, my experience, my background as a HSI SA, and my conversations with other law enforcement officers.  Because I am submitting this affidavit for the limited purpose of securing a search warrant, I have not set forth every fact of this investigation.

3.      Based on my experience and training, I know the following:

A.      Narcotics traffickers often maintain one or more cellular or smart telephones (devices) which they utilize to further their narcotics trafficking.  Narcotics traffickers use these devices to communicate operational directives and information concerning the conduct of the organization's illegal activities to other members, including their suppliers, distributors, and other co-conspirators.  I know based upon my training and experience that timely communication of information between organizational members is critical to the overall success of an organization's

illegal activities. The critical nature of this information is derived from the necessity of the organization's management to provide instructions for the importation, storage, transportation, and distribution of narcotics.

B.     I further know from my training and experience that a cache of information, including dialed, received, or missed calls and text messages sent, received, or placed in draft status, can be found on these devices. I know that the identities and telephone numbers of other participants in the narcotics trafficking activity are often maintained in the contact lists of these devices. In my experience, narcotics traffickers also use these devices to take and store photographs or video recordings of themselves with their co-conspirators and with contraband, including narcotics, currency, and firearms. Narcotics traffickers also use the GPS or location applications of these devices, which can reveal their whereabouts when they conducted or arranged narcotics related activities or travel. In addition, narcotics traffickers use these devices to store information related to the financial transactions that occur during the course of their illicit activities, such as drug ledgers and financial accounts and transactions. In my experience, the devices used by narcotics traffickers often contain evidence relating to their narcotics trafficking activities including, but not limited to, contact lists, lists of recent call activity, stored text and voice mail messages, photographs and video recordings, GPS and location information, and financial accounts and records.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.     The property to be searched is (1) a black iPhone cellular telephone; Model No: A1533; FCC ID#: BCG-E2642A (hereinafter the "Device"). The Device was seized from Luis Roberto ARREOLA Sotero, incident to his arrest on June 10, 2017, at the Santa Teresa Port of Entry (POE) in Santa Teresa, New Mexico. The Device is currently located at Homeland Security Investigations, 200 E. Griggs Ave., 3rd Floor Las Cruces, NM 88001.

5.     The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6.     On June 10, 2017, at approximately 12:12 p.m., Luis Roberto ARREOLA Sotero applied for entry at the Santa Teresa POE in Santa Teresa, New Mexico. ARREOLA Sotero was the driver and sole occupant of a 2004 Ford Lobo, white in color, bearing Mexican (MX) registration EE73770. The primary inspection lane was being operated by CBPO Cosme Rappa.

2

7.     CBPO Rappa asked ARREOLA Sotero where he was coming from and the purpose of his travel to the United States. ARREOLA Sotero stated from Chihuahua, Mexico. ARREOLA Sotero further stated he was going to the outlet shops in El Paso, Texas to go shopping. CBPO Rappa asked ARREOLA Sotero if he had any illegal drugs, narcotics, or controlled substances in the vehicle. ARREOLA Sotero replied no. CBPO Rappa asked ARREOLA Sotero if there were any meats, fruits, plants, alcohol, tobacco, $10,000 dollars or more. Again, ARREOLA Sotero answered no. CBPO Rappa questioned ARREOLA Sotero as to who owned the vehicle. ARREOLA Sotero claimed ownership of the vehicle. CBPO Rappa asked ARREOLA Sotero if the vehicle had recently had any mechanical or body work done. ARREOLA Sotero indicated the vehicle had no recent repairs. CBPO Rappa asked ARREOLA Sotero how much money he had. ARREOLA Sotero stated $500 USD.

8.     At this time, CBPO Rappa observed that the vehicle had a system-generated referral and that the vehicle had no prior crossings. CBPO Rappa asked ARREOLA Sotero what he did for a living and ARREOLA Sotero replied that he sold TVs and further stated that he was also an engineering student. CBPO Rappa informed ARREOLA Sotero that bringing controlled substances from Mexico to the United States was against the law and asked ARREOLA Sotero if he wished to amend his declaration. ARREOLA Sotero responded no. ARREOLA Sotero was escorted into secondary for further inspection by CBPO Rappa.

9.     In secondary, CBPO Michael Bell also received a negative Customs declaration from ARREOLA Sotero. CBPO Bell asked ARREOLA Sotero where he was traveling from and ARREOLA Sotero responded Chihuahua, Mexico. CBPO Bell asked ARREOLA Sotero where he was going. ARREOLA Sotero stated shopping in El Paso, Texas. ARREOLA Sotero further stated he had about $500 USD to go shopping. ARREOLA Sotero again took responsibility for the vehicle and added that he owned the vehicle for a year. CBPO Bell asked ARREOLA Sotero if anyone else operated the vehicle in Mexico and ARREOLA Sotero stated he was the only one who drove the vehicle. CBPO Bell asked ARREOLA Sotero for the vehicle registration. As ARREOLA Sotero was handing CBPO Bell the vehicle registration, CBPO Bell noticed that ARREOLA Sotero's hand was shaking. CBPO Bell further noted that when ARREOLA Sotero would answer questions, that ARREOLA Sotero's voice would shake.

10.    Further inspection of the Ford Lobo revealed two non-factory metal collars in the rear wheels and two non-factory metal boxes inside the gas tank. Several of the metal collars/boxes were drilled extracting a green leafy-like substance which field tested positive for the properties of marijuana. The gross weight of the marijuana removed from the Ford Lobo was 63.4 kilograms.

11.    HSI SA Daniel Ortiz along with Task Force Officer (TFO) Alfredo Ferrer responded to the incident and were briefed by the CBPOs. ARREOLA Sotero was read his

Miranda Statement of Rights in the Spanish language aloud.  ARREOLA Sotero acknowledged he understood his rights and invoked his right to an attorney and the interview was terminated.


## TECHNICAL TERMS

12.    Based on my training and experience, I use the following technical terms to convey the following meanings:

a.    Cellular telephone:   A cellular telephone (also known as a mobile telephone or a wireless telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A cellular telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, cellular telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.    Digital camera:   A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.    Portable media player:   A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.      GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records of the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.   The Global Positioning System consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.      PDA:  A personal digital assistant (PDA) is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include GPS technology for determining the location of the device.

f.      Internet:  The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

13.     Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a cellular telephone, digital camera, portable media player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the Device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

14.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

15. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how each Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on each Device because:

    a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.    The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

16. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

17. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

18.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully Submitted,

Daniel J. Ortiz
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me

On  6 / 15 / 17                :

United States Magistrate Judge

7